# R. T. Hicks and W. F. Hess v. William L. Deemer.

1. FRAUD AND DECEIT—*Procuring Land for Less than Its Value.*— A party who induces another to believe that the will of his father gives him less than a fee simple estate in certain lands and procures his interest in such lands for an amount far below its actual value, is guilty of fraud and deceit.

2. ESTATES—*Rule in the Shelley Case.*—A father devised to. his son and his lawful heir 120 acres of farm land, worth $6,000 or $7.000, charged with several small bequests amounting to $450. Afterward he executed a codicil in which he provided that the son should have the use and control of the land during his lifetime only, and that at his death the said lands should go to his lawful heirs, provided that he make the payments as stated in the original will. *Held,* that by the terms of the will and codicil, the son took the fee according to the rule in Shelley's case.

3. PARTIES—*Action at Law for Fraud and Deceit in the Purchase of Land.*—A person who has been defrauded of his lands can not be denied his right of action in a suit to recover damages for the consequences of a fraud practiced upon him simply because the legal title to the land was not in him at the time the defendant purchased it.

**Action in Case,** for fraud and deceit. Appeal from the Circuit Court of Pike County; the Hon. THOMAS N. MEHAN, Judge, presiding. Heard in this court at the November term, 1899. Affirmed. Opinion filed February 27, 1900.

MATTHEWS & GRIGSBY, attorneys for appellant R. T. Hicks.

W. L. COLEY, attorney for appellant W. F. Hess.

WILLIAM MUMFORD and HUGH JOHNSTON, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This is an appeal from a judgment of $1,200 recovered by appellee against appellants in an action on the case charging them with fraud and deceit in the purchase of 120 acres of land which had been devised to appellee by his father.

A reversal is urged upon the following grounds :

1. The legal title to the land in question not being in

appellee at the time it was purchased, he had no right of action at law against appellants.

2. The court erred in admitting in evidence the will and codicil of appellee's father, Jacob Deemer, unaccompanied by an order from the County Court showing the same had been admitted to probate.

3. The court erred in instructing the jury that appellee took a fee simple estate in the land by virtue of the will.

4. The evidence did not support the verdict.

The evidence in the record shows that in January, 1894, Jacob Deemer died, leaving a large quantity of land, several children and a will. By the second clause in the will, he devised to his " son, William Deemer, and his lawful heirs," 120 acres of farm land, worth $6,000 or $7,000, charged with several small bequests amounting to $450. A few days before he died he executed a codicil to the will, which provided that William should have the use and control of the land "during his lifetime only, and that at his death said lands shall go to his lawful heirs, provided that he makes the payments as stated in the original will." Appellee is without education and of rather weak intellect. At the time of his father's death there were unsatisfied judgments against him and one Fisher, aggregating nearly $2,000. Hearing that an effort would be made to obtain satisfaction of the judgments out of his inheritance, he executed a deed to his brother, Wesley Deemer, with an agreement, as he claims, that his brother would pay off the judgments, and on being repaid should re-convey the land to appellee's wife. Appellee continued in possession of the land and Wesley did not pay any of the judgments. Bills in chancery were filed in the Circuit Court to set aside the deed so that the land could be sold on execution from the judgments. Appellee consulted appellant Hess, a lawyer living in the adjacent village of Pearl, and through Hess a trade was effected with appellant Hicks. The result of the negotiations with Hicks was a conveyance of the land from Wesley Deemer to Hicks in consideration of Hicks paying off the judgments, the small bequests charged in the will

against the land and $1,000 in cash for appellee. Hicks paid in all about $3,000, and immediately conveyed the land to a third party for an expressed consideration of $7,200, but for an actual consideration, as it is claimed by appellants, of $5,400.

The frictional question upon the trial was whether the appellants were guilty of fraud and deceit in procuring the interest of appellee in the land for an amount far below its actual value, with the belief resting upon appellee's mind that the will of his father gave him less than a fee simple estate.

We can not agree with counsel that appellee had no right of action of law against appellants because the legal title to the land was not in him at the time Hicks purchased. This was not a suit to cancel the deed to Hicks, or to anywise call in question the title obtained by him or his grantee. It was a suit to recover damages for the consequences of a fraud practiced upon the injured party.

Although the rights of appellee in the property after his conveyance to his brother were purely equitable, he had such an interest as to entitle him to ask a court of law, in an action on the case, to determine the damages sustained by him in the fraudulent transaction which deprived him of it.

A defendant having demurred to a declaration which sets up in detail the plaintiff's cause of action, is in no position to urge that the remedy of the plaintiff is in equity and not at law after filing pleas at bar. Such is the position of appellants in this case. Having pleaded to the merits and gone to trial, they can not now urge objections to the jurisdiction of the court.

To the contention that the court erred in allowing the will of Jacob Deemer to go to the jury because no order of the County Court admitting it to probate accompanied the will, it is sufficient to say that specific objection was not made at the time the will was offered in evidence.

The court correctly instructed the jury that William Deemer, by virtue of his father's will, became the owner of

the land in fee and properly refused to instruct them that by the codicil he became vested in a life estate only.  By the terms of the will and codicil he took the fee according to the rule in Shelley's case.  Baker et al. v. Scott, 62 Ill. 86; Brislain v. Wilson et al., 63 Ill. 173; Wicher et al. v. Ray, 118 Ill. 472.

A careful examination of the evidence in the record satisfies us that the negotiations were carried on with the belief resting upon the mind of appellee that the will of his father gave him only a life estate in the land; and in this belief he concluded the negotiations.

His consent to the trade was given under the belief that on his death the land would go to his children, notwithstanding his deed to Wesley Deemer and the deed of Wesley Deemer to Hicks.  The mere fact that he made the trade under such mistaken belief of his rights and for a consideration far below the actual value of the land would not entitle appellee to recover, of course.  To render appellants liable it must appear that they were, in some manner, instrumental in increasing that belief in appellee, or in confirming it after they found he had it.  If the testimony of appellee is true, then Hess is, perhaps, more responsible than any other person for appellee's having such belief.  He testified that he sought the advice of Hess when he heard judgment creditors were about to levy executions on the land; that he employed him as an attorney to look into the matter and examine the will; that Hess made such examination and advised him that all the interest that could be sold on execution was a life estate, and that his children would have the land in the end.  He further testified that he had numerous conversations with Hess when the trade with Hicks was under consideration, in which Hess told him that he had but a life estate and that at the time the trade was consummated, it was distinctly stated that appellee was selling only a life estate.  He was squarely contradicted by Hess; but it was the peculiar province of the jury, in the conflict, to say where the truth was.  We are not inclined to say that they should have believed Hess and not appellee.

What fraud attached to Hicks sufficient to render him liable?

By his own testimony, Hess was employed by him as agent to purchase the land. Hess seems to have acted in the dual capacity of legal adviser for appellee and purchasing agent for Hicks. It does not appear that Hicks should enjoy the fruits of the fraud and deceit of his agent without being liable, in some measure, to the party defrauded. In addition to that, there is the testimony of appellee that on the night when the trade was concluded he stated to Hicks and others present that the sale included his life estate only, and to that Hicks assented.

When we consider the limited mental capacity of appellee, the failure of Hess to correctly inform him that he took a fee simple estate in the land under the will, the reliance of appellee upon the advice of Hess as a lawyer, the fact that Hess engineered the trade as an agent of Hicks and that Hicks must have known, at the time the trade was concluded, that appellee had been overreached, we feel that justice requires the affirmance of the judgment. Judgment affirmed.