## 9319

### BATESBURG COTTON OIL CO. v. SOUTHERN RY. CO. *ET AL.*

#### (88 S. E. 360.)

1. RAILROADS—FIRES—EXEMPTIONS FROM LIABILITY—PUBLIC POLICY.—Agreements, reciting a railroad's license to a cotton oil company to erect and maintain two warehouses on the railroad right of way, providing that the company should save the railroad harmless against all claims and demands against the railroads for loss or injury from fire or otherwise, however resulting, by reason of the presence of the warehouses upon the right of way, and that upon the construction and operation of a track and the affording of terminal facilities it would save the railroad harmless against all damage resulting from its negligence or from fire by the engines or trains in connection with the track, were valid and not against public policy.

2. CORPORATIONS — CONTRACTS — ULTRA VIRES—PRESIDENT'S WAREHOUSE AND INDUSTRIAL TRACK AGREEMENTS.—Where one of plaintiff's organizers' applied to defendant railroad for an industrial track and signed an agreement as president of an oil mill which was never incorporated because failing to get a charter, and, as president of plaintiff oil company, subsequently incorporated in its stead, signed warehouse and industrial contract agreements, plaintiff was bound by such agreements, as its president's acts, under the circumstances, were not *ultra vires*.

3 CORPORATIONS—CONTRACTS—ULTRA VIRES—ACCEPTANCE OF BENEFITS—ESTOPPEL TO DENY VALIDITY.—In such case, plaintiff company, which received and enjoyed the benefits, without question as to their validity, of agreements which the defendant railroad carried out in good faith and with the expenditure of money, was estopped from setting up their invalidity on the ground that the acts of the president were *ultra vires*.

4. CONTRACTS—CONSTRUCTION—QUESTION FOR JURY.—It is the duty of the Court to construe a contract where it is plain and unambiguous.

5. CONTRACTS — PRESUMPTION — KNOWLEDGE OF EFFECT. — Every one is presumed to know the effect of a contract that he signs.

6. Contracts—Validity—Misrepresentations as to Legal Effect.— Plaintiff cotton oil company could not avoid its industrial track agreements with defendant railroad by pleading misrepresentations as to the legal effect of the exemption clauses, as it had no right to rely on the statement as to what the legal effect of the agreements would be, when by ordinary vigilance it might have ascertained whether the statement as to their effect was correct.

Before Wilson, J., Lexington, February, 1915. Affirmed.

Action by the Batesburg Cotton Oil Company against the Southern Railway Company and another. Judgment for defendants, sustaining their demurrers, and plaintiff appeals.

*Mr. C. M. Efird*, for appellant, cites: *As to the construction placed by the parties on the contract:* 2 Parsons, Contracts (16th ed.), sec. 498; 48 L. R. A. 41-46. *Issue as to whether the representations were made, and with what intent:* 50 S. C. 397, 401, 402; 92 S. C. 384, 393.

*Messrs. Thurmond, Timmerman & Callison* and *Barrett Jones,* also for appellants, cite: *As to issue of fraud:* 98 S. C. 162; 82 S. C. 176; 1 Strob. 400; 62 S. C. 42; Cooley, Torts 474; 23 Beav. 530; 5 Pa. St. 216; 47 Am. Dec. 408; 97 S. C. 25; 75 S. C. 339; 14 Rich. 237; 20 Cyc. 17, 18, 62. *Construction placed by parties on contract:* 72 S. C. 427; 78 S. C. 390; 98 S. C. 234.; 32 S. E. 192; 9 Cyc. 399. *Policy of State:* 20 S. C. 430; 101 U. S. 71; 174 U. S. 95; 77 S. C. 467; 85 S. C. 165.

*Messrs. Johnstone & Cromer,* for respondent, submit: *The warehouse agreements and the industrial tract agreements are valid, not against public policy:* 85 S. C. 168; 175 U. S. 91; 5 Ann. Cas. 744; 12 Ann. Cas. 495. *The plaintiff having availed itself of the advantages and received the benefits of the agreements, is estopped from pleading that its agents acted ultra vires in executing the same:* 65 S. C.

45; 37 L. R. A. 682; 20 L. R. A. 767, 775; 23 Fed. Rep. 232; 96 U. S. 341; 47 Ind. 407; 17 Am. Rep. 702; 141 Mass. 496; 10 Cyc. 248, 249; 2 Cook, Corporations (6th ed.), sec. 681; 89 S. C. 185; 172 N. Y. 172; 23 Sup. Ct. 527; 87 S. C. 445; 54 S. C. 582; 60 Am. St. Rep. 172; 19 Sup. Ct. Rep. 300; 11 L. R. A. 845. *The plaintiff cannot avoid the exemption clauses in the industrial track agreements by pleading false representations as to their legal effect:* 8 A. & E. Enc. of L. (1st ed.) 636; 8 *Ib.* 636; 14 *Ib.* 54; 27 Ann. Cas. 1143; 91 U. S. 23 L. Ed. 205; 35 L. R. A. 605; 37 L. R. A. 503; 1 Cook Corp. (6th ed.), sec. 147; 101 S. C. 235; 9 S. C. 20.

March 8, 1916.

The opinion of the Court was delivered by Mr. Justice Watts.

This is an action for $79,602.45 for the loss of plaintiff's plant and property at Batesburg, April 27, 1913. It is alleged that the property was destroyed by fire communicated to it by a locomotive of defendant on the main line of Southern Railway Company. The defendant in its answer sets up, as a bar to its recovery, certain exemption clauses in an industrial track agreement and track scale agreement made with the Batesburg Oil Mill, and warehouse agreement and an industrial track agreement made with the plaintiff. The plaintiff, by reply, alleges that the Batesburg Oil Mill was never a corporation, though such a corporation was contemplated; that A. C. Jones, who executed the agreement on the part of Batesburg Oil Mill and the plaintiff, was acting without authority from the directors and stockholders of the plaintiff, and that the agreements are *ultra vires;* and that A. C. Jones, president, was induced to execute the industrial track agreement by false and fraudulent representation of the agents of the railway company, that the exemption clause did not apply to fires communicated from the main line, that the Supreme Court of South Carolina had so held,

and that this was the railway company's construction of the contract. The defendant railway company demurred to the sufficiency of the reply, and Judge Wilson sustained the demurrer on three grounds: (1) That the plaintiff, having enjoyed the benefits of the contract with Batesburg Oil Mill, is estopped from denying that it was at least a *de facto* corporation; (2) that the plaintiff, having enjoyed the benefits of the industrial track agreements, is estopped from pleading that they were *ultra vires;* and (3) that the plaintiff cannot escape liability by pleading misrepresentations as to opinions and matters of law. From this order plaintiff appeals and by nine exceptions alleges error on the part of his Honor in holding that the plaintiff is estopped from denying it was at least a *de facto* corporation, and in not holding that the time of the execution of the agreement it was not in existence at all, and if it availed itself at all by use of industrial sidetracks, it did so because of representations made by its agents, and such acts did not amount to an estoppel; error also in holding plaintiff is estopped from pleading that its agents. acted *ultra vires* in executing the sidetrack contract as plaintiff availed itself of the advantages and benefits; error in holding that representations of defendant's agents as to fires were misrepresentations as to the opinions and matters of law, and in not holding the contrary; error in not holding that the reply raised issues of fact, and in not holding that the alleged contract was contrary to public policy, as it undertook to relieve the defendant from liability for the negligent and wilful acts of its servants; error in not holding that plaintiff could show waiver; and error in not holding that the reply alleged the parties had agreed as to how the contracts were to be construed, and defendant was estopped from contending for a different construction.

It will be seen that the plaintiff's exceptions in part insist that they are certain issues of facts raised by the pleadings,

and, as the demurrer admits the truth of the reply, these issues should be submitted to a jury.

The sufficiency of the reply will be tested: (1) Whether the exemption clauses in the industrial track agreements are contrary to public policy. By reference to the contract between the plaintiff, made September 15, 1911, and the Southern Railway Company, the Batesburg Oil Company was given the license or right to erect and maintain two warehouses in the right of way of the railroad company, and has the following clauses:

"That it will indemnify and save harmless the railway company against any and all loss or damage to property of the railway company, and against all claims, demands, suits, judgments, or sums of money accruing to the licensee, or to any other party, against the railway company, for loss or injury, caused by fire, or otherwise, howsoever resulting, either to person or estate, and arising by reason of the presence of said warehouses upon the right of the railway company."

The agreement made between the defendant railway and the Batesburg Oil Mill, on September 28, 1910, for the construction and operation of an industrial track, and that made between the defendant railway and Batesburg Cotton Oil Company, January 22, 1912, for the construction and operation of an industrial track, contain this clause:

"That it will indemnify and save harmless the railway company against any and all damage resulting from negligence of the party of the second part, its servants and employees, in and about said industrial track and the right of way therefor; and, furthermore, against any and all claims, demands, suits, judgments or sums of money accruing for loss or damage by fire communicated by locomotive engines or trains of the railway company to buildings used by the party of the second part in connection with the business served by said industrial track, or to the contents of such buildings, or to other property stored by or with the consent

·of the party of the second part upon or near said industrial track. The railway company hereby stipulates for this protection as a condition of its agreement, herein expressed, to afford the above described terminal services and facilities to the party of the second part elsewhere than at its regular station."

Under the decision of this Court in the case of *Mayfield* v. *Southern Railway Company—Carolina Division,* 85 S. C. 168, 67 S. E. 132, it has been expressly decided that such warehouse agreements and industrial track agreements are valid and not against public policy. Until that case is overruled it is the law of the land, and we see no reason why it should be overruled and a different policy and law declared. This principle has been declared also to be the law in some other States.

Can the plaintiff escape liability by pleading that the agreements were *ultra vires?* It is alleged that the Batesburg Oil Mill was never incorporated. A. C. Jones and others desired to organize a cottonseed oil mill, and applied to the defendant road for an industrial track, and that A. C. Jones signed the agreement as president of the Batesburg Oil Mill; that the Batesburg Cotton Oil Company was subsequently incorporated, and performed fully all of the stipulations and requirements of the agreements. A. C. Jones, as president of the Batesburg Oil Mill, and as president of the plaintiff, Batesburg Cotton Oil Company, executed all of these agreements. On September 28, 1910, an industrial track agreement was made with Batesburg Oil Mill. The Batesburg Cotton Oil Company was incorporated on October 17, 1910. The track scale agreement was made with the Batesburg Oil Mill November 28, 1910. A warehouse agreement was made with the Batesburg Cotton Oil Company on February 13, 1911. On September 15, 1911, a warehouse agreement was made with the Batesburg Cotton Oil Company. The industrial track agreement was made with plaintiff on January 22, 1912. The

plaintiff is bound by the acts of Jones. He had the power to bind them under the circumstances of the case. He was president of both companies, the corporation that failed to get the charter, and the new company formed the plaintiff. What he did under the circumstances was not *ultra vires.* The plaintiff cannot escape by saying he acted without authority of directors and stockholders. He was their agent, promoting their enterprise. He signed five agreements, and plaintiff received and enjoyed the benefits of four of them. The defendant railroad carried out the agreements in good faith, and as long as the plaintiff derived the benefit of the same, we hear of no complaint from them as to their validity, and they cannot be heard to assert that as long as the agreements were beneficial to them, they were valid, and when they ceased to be beneficial to them they are invalid, and Jones' actions were *ultra vires,* and, therefore, invalid. By their actions and conduct they are estopped from denying their validity. There is no law that prevents the parties making the contracts that were made, and the defendant, having in good faith expended money, and every particular carried out in good faith, and performed its part of the agreements, and the corporation plaintiff having enjoyed the benefits therefrom, then the plaintiff is bound by the contract made by its president, and under the peculiar facts of this case is estopped from denying its liability thereunder and questioning the validity of the agreements entered into. The plaintiff will not be allowed to enjoy the benefits and retain them under the admitted facts of the case, and when it suits them and it is to their advantage be allowed to repudiate and do away with the agreements.

Can the plaintiff avoid the industrial track agreements by pleading misrepresentations as to the legal effect of the exemption clauses? It is the duty of the Court to construe a contract where it is plain and unambiguous. Every one is presumed to know the effect of a contract that he signs, and misrepresentations as to the legal effect

made to him by the other party will not invalidate the contract. The plaintiff had no right to rely on the statements made as to what the legal effect of the contract would be. By ordinary vigilance the plaintiff could have ascertained whether the opinion of the party making the statements as to what the law was was correct or not in reference to the contract. The law governing this exemption clause was easily accessible as the case of *Mayfield* v. *Railway, supra,* had been filed some months previous to the time when this agreement was made. It would be disastrous to contracts to allow the plaintiff to avoid the contract and escape liability on the plea that a misrepresentation had been made to him as to its legal effect.

All exceptions are overruled.

Judgment affirmed.