67 So.2d 77

**BANK OF LORETTO v. BOBO.**

**8 Div. 31.**

Court of Appeals of Alabama.

March 17, 1953.

Rehearing Denied April 7, 1953.

Bradshaw & Barnett and Elbert B. Haltom, Florence, for appellant.

Potts & Young and Wm. F. Baker, Florence, for appellee.

HARWOOD, Judge.

Trial below was had before the court without a jury.

The plaintiff is a Tennessee banking corporation and the defendant is a sole trader doing business in Florence, Alabama, under the name of Bobo Motor Company.

The complaint as amended was in one count and claimed the sum of $770 due from defendant by a check drawn by him on a bank in Florence, Alabama, in favor of the plaintiff on or about January 3, 1950, which was presented and payment refused because of defendant stopping payment on same.

To the complaint the defendant filed seven pleas.

Pleas 1 and 2 were of the general issue.

Plea 3 was no consideration.

Plea 4 was non indebitatus.

Plea 5 sets up no consideration, and then showed that:

"Defendant did issue a check in the amount of Seven Hundred Seventy And No/100 Dollars ($770.00), dated the 3rd day of January, 1950, payable to the Plaintiff, but at the time Defendant did not owe Plaintiff any money whatsoever and because of this fact stopped payment on the check before it was presented to the First National Bank for payment. Defendant alleges that the issuance of the check was merely a voluntary act of the Defendant without any consideration therefor and that when payment was stopped, at his request, the act in effect was destroyed; Defendant also alleges that the Plaintiff has no change of position in reliance upon the act of the Defendant; wherefore your Defendant says he is not indebted in any amount to the Plaintiff."

Plea 6 went out on demurrer.

Plea 7, to which the demurrer was overruled, sets up that defendant purchased an automobile in good faith in Lauderdale County, Alabama, with no knowledge that plaintiff had a mortgage on said automobile, and after said automobile had been in Lauderdale County, Alabama, for more than six months; that the first knowledge defendant had of said mortgage was when plaintiff's attorney, Howard Freeman, came to Florence, Alabama, and advised him of same; that said attorney fraudulently advised defendant he was liable for the unpaid balance due on said mortgage, when in fact defendant was not so liable, and that such representation by plaintiff's attorney was made with intent to deceive defendant and induce him to act thereon; that defendant was and is a layman unlearned in law and did not understand the effect of recording statutes, whereas plaintiff's attorney was skilled in law, which fact he made known to defendant; that defendant relied on the representations of plaintiff's attorney and issued the check sued on, which check is null and void because procured by said false representations.

The plaintiff demurred to pleas 5, 6 and 7, which demurrers were overruled as to pleas 5 and 7, and sustained as to plea 6.

The plaintiff then filed a replication of the general issue to the pleas, and a special replication, also to all of the pleas.

This special replication sets up that the mortgage on the automobile was made by Ed Craig, and secured a note made by mortgagor Craig; some $770 being due on said note at the time defendant executed the check sued on; that on January 4, 1950 the defendant came to Loretto, Tennessee, and informed the officers of plaintiff that he had come to pick up the Ed Craig note and mortgage held by the plaintiff; that on said day the defendant executed the check sued on in consideration of the assignment of the mortgage and note to him; and plaintiff did on said day assign and deliver the note and mortgage to defendant; that defendant was at the time engaged in buying and selling automobiles in Florence, Alabama; that prior to January 4, 1950 the defendant had purchased the automobile in question from Ed Craig, not knowing when the vehicle had been brought into Alabama; that upon plaintiff's attorney informing defendant that he was going to repossess the automobile under its mortgage the defendant advised the attorney he had sold the automobile to a third party and if no attempt was made to repossess the automobile the defendant would pay the Craig mortgage; that plaintiff's lawyer practices in Tennessee and has never engaged in law practice in Alabama; that plaintiff's attorney made no false or fraudulent representations in any manner; that defendant had ample opportunity to advise with counsel of his choice; that defendant after talking with plaintiff's attorney called plaintiff by long distance telephone and stated that if plaintiff would hold its claim in abeyance he would come to Loretto and pay the Craig indebtedness; plaintiff's agent did hold the claim in abeyance until defendant came to its place of business and executed the check in question in exchange for the transfer of the Craig note and mortgage; that on the date of the said transfer the note and mortgage were valid obligations and liens under the law of Tennessee; and further, that subsequent to the date of said transfer various creditors of Ed Craig have collected from him obligations owed by him to them.

Issue was joined on the pleadings above mentioned.

The evidence presented below tends to show that on March 15, 1949 Ed Craig executed a note for $950 payable to plaintiff in 15 equal installments of $60 each, beginning April 15, 1949, and secured said note by a chattel mortgage on a Fraser automobile.

This mortgage was recorded in Lawrence County, Tennessee, on March 24, 1949.

On April 16, 1949 Craig made four payments for April, May, June, and July 1949. No other payments were made on the mortgage.

On April 9, 1949 the defendant (appellee) bought this automobile from Craig in Lauderdale County, Alabama. The defendant did not check the records of Lauderdale County, Alabama, before making the purchase, but did call two or more other automobile dealers in reference to Craig. The car bore Tennessee tags at the time of the sale.

Around May 1, 1949 the defendant sold this automobile to Elmer Johnson.

No further payment was made by Craig to plaintiff on his note though the bank sent him notices. In September or October, 1949, the plaintiff learned that the car was no longer in Lawrence County, Tennessee. It then turned the note over to an attorney to collect. This attorney produced no results, and about December 25, 1949 the plaintiff turned the matter over to another attorney, Mr. Howard Freeman of Lawrenceburg, Tennessee.

About the last day of December Mr. Freeman called at defendant's place of business in Florence, bringing the chattel mortgage with him.

Mr. Freeman testified that defendant admitted he had bought the automobile from Craig, and "knew all about the matter." That he had kept the car about a month and sold it to Elmer Johnson.

Freeman further testified that he told the defendant that the plaintiff had a mortgage on the car and that he, as a lawyer of Lawrenceburg, Tennessee, was representing the bank.

The defendant permitted Freeman to examine his records. Freeman observed that the motor number of the car, as listed on the defendant's records, did not correspond with such number in the mortgage and raised the question that it might not be the same automobile, and he would like to check the motor number on the car itself.

The defendant replied that he did not want Freeman to do that as he did not want his customers made uneasy. Freeman denied that he made any claim against the defendant whatsoever, stating that he told the defendant that he wanted to see the automobile to determine if it was the one the plaintiff had a claim on so he could repossess it.

Freeman stated that he showed defendant where the mortgage had been recorded in Tennessee, but that he did not attempt to advise defendant during their conversation at any time, and made no representations as to Alabama law.

On cross-examination Freeman testified that he told the defendant that the plaintiff had a legal claim on the car and that he was going to try and repossess it from whoever had it; that he did not think he went into detail as to what defendant's rights were in either Alabama or Tennessee; that he suggested to defendant that he see his lawyer about the matter.

Freeman further testified on cross-examination that the defendant stated that Johnson had bought the car in good faith, and that he wanted to straighten the matter out even if he had to pay the mortgage off, and he did not want Johnson to know about it.

Freeman further testified that the defendant finally stated that he wanted two or three days to look into the matter and wanted the matter left in abeyance during that time. Freeman agreed to this and the men parted with the understanding that the defendant would contact K. J. Augustine, plaintiff's cashier, concerning the mortgage.

Mr. Freeman also testified that under the law of Tennessee that the assignment placed on the Craig note was correct in form, and further that under such law a check was prima facie presumed to have been issued for a consideration.

For the plaintiff Mr. K. J. Augustine, its cashier, testified that defendant called him over long distance telephone and told him he would be in Loretto in a day or so to "take up or buy the Ed Craig note" and requested that no action be taken in the matter. Augustine told defendant the plaintiff would let the matter stand until he came to Loretto.

Mr. Augustine further testified that on January 3, 1950, the defendant came into the bank and introduced himself, stating that he was there to "straighten up the Ed Craig matter," or words to that effect, or that he was there to pay off the Craig mortgage. Upon being told that the amount due on the Craig note, $770, the defendant executed a check in that amount to plaintiff and presented it to Augustine.

Augustine testified that he then, in behalf of the bank, wrote an assignment to the defendant of the note, without recourse, on the back of the note and delivered the note and mortgage to the defendant.

In this connection, and in response to a question by the court, Mr. Augustine stated that the defendant never asked that the note be assigned to him, that he, Augustine, made the assignment of his own accord.

The defendant then requested Augustine to call Mr. Freeman in Lawrenceburg, and ask if he could represent the defendant in the collection of the note. This Augustine did, but Freeman declined to take the business.

Mr. Augustine further testified that shortly before January 4, 1950 Craig owned a farm in Lawrence County, Tennessee, and other property such as a home and a car; that the note was collectible, but had been written off by the bank because of banking regulations.

For the defense Mr. Bobo, the defendant, testified that he was not contacted by Free-

man until some eight and a half months after he had sold the automobile, or until the last of December, 1949.

According to Bobo, after he had told Freeman he had bought and sold the car without knowledge that it was under mortgage, Freeman stated he represented the Bank of Loretto that had a mortgage on the car, and when he found out where it was he would just go and get it.

Bobo then told Freeman that his (Bobo's) customer had bought the car in good faith and was going to keep the car "if I had to pay for it myself;" that he told Freeman he wanted to do what was right, and if it was right for him to pay he would.

Upon discovery that the motor numbers listed in the mortgage and in Bobo's records did not correspond Bobo told Freeman he thought it was the same car. A check with the original factory list of numbers revealed that it was.

Mr. Bobo further testified that during their conversation Mr. Freeman told him that either he or his customer was liable for the mortgage on the car, and all he (Freeman) had to do was go and get it. Further, according to Mr. Bobo:

"He was talking about an election coming up, and about being interested in someone that was running. He said that being a member of Freeman and Freeman that they got things done. He said it was his first job for the Bank Of Loretto and he told me that he wanted to make an impression with the Bank, that if he did he would get more business and votes.

"He stayed with us for a couple of hours, and after we finished the discussion, there wasn't any words, we shook hands, and he went on. Then the next morning he called me on the phone."

This telephone call was a long distance. Mr. Freeman asked Bobo what he was going to do about the Craig note. Bobo told him he had not discussed the matter, but still wanted to do what was right, and

would be in Loretto within the next day or so to "pay it off."

Mr. Bobo further testified that in their first conversation Mr. Freeman asked him if he did not know that the note allowed for attorney's fees and court costs, to which he replied that if it was "his duty to pay it off" he would rather pay it without having to pay such costs.

Without consulting an attorney Bobo went to Loretto. There he met Mr. Augustine, plaintiff's cashier. According to Bobo: "I told him I wanted to get straight with him on the Craig deal. Mr. Augustine invited me into his office, and we sat down, and I gave him the check then."

This check was received in evidence, and bears a notation in the lower left hand corner: "For Ed Craig-Mortgage Motor No. M–24253."

The evidence further shows that Bobo stopped payment on this check on January 6, 1950, and that three or four days after the check had been issued Bobo or his attorney mailed the Craig note back to plaintiff. Plaintiff promptly notified Bobo that it was not accepting the note in cancellation of Bobo's obligation, and was holding the note for Bobo.

■ Appellant's assignment of error number 1 asserts as error the action of the trial court in overruling appellant's demurrer to appellee's plea 5. The plea asserts that the check was given without consideration. Such plea is good under our statutes and decisions, and is not subject to demurrer. Giles v. Williams, 3 Ala. 316; Kolsky v. Enslen, 103 Ala. 97, 15 So. 558; Armstrong v. Walker, 200 Ala. 364, 76 So. 280. The lower court did not err in this ruling on said demurrer.

Assignment of error number 2 asserts error in the action of the trial court in overruling appellant's demurrer to plea 7, particularly on the grounds that the plea confesses, yet presents no matter of avoidance.

Essentially the plea sets up fraud in the procurement of the check. The plea sets out facts showing that appellee was not li-

able on the mortgage because of the recording acts of Alabama; the plea further alleges that appellant's attorney, duly acting in such capacity, fraudulently represented to appellee that he was legally liable for the unpaid balance due on the mortgage note, when in fact there was no such liability, which appellant's attorney knew, or should have known, and that such fraudulent representation was made to deceive the appellee and for the purpose of inducing him to act thereon; that the appellee was unlearned in the law and did not understand the legal import of legal instruments and recording acts, whereas appellant's attorney was skilled in law which fact was made known to appellee; that because of such fact he relied on the representations of appellant's attorney and issued the check sued on.

The general rules as to misrepresentation of law, amounting to legal fraud are stated in Clayton v. Glasscock, 221 Ala. 3, 127 So. 538, 539, as follows:

"It has been said that misrepresentation or concealment as to matter of law cannot constitute remedial fraud, because everyone is presumed to know the law, and therefore cannot in legal contemplation be deceived by erroneous statements of law, and such representations are ordinarily regarded as mere expressions of opinion on which the hearer has no right to rely. Further, it has been held that a charge of fraud cannot be predicated on an honest error in a statement of the law. But misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood as where they amounted to an implied assertion that facts existed which justified the conclusion of law expressed * * *."

In the absence of a relation of trust and confidence, or some other peculiar fact or circumstance, a misrepresentation of matter of law or of matter of judgment equally open to the observation of all parties will not vitiate a contract. Georgia

Home Ins. Co. v. Warten, 113 Ala. 479, 22 So. 288. The reason cavalierly assigned for such rule is that ignorance of the law excuses no one, a criminal law dogma implanted into civil by Lord Ellenborough in 1802 largely because plaintiff's counsel could cite him no case otherwise. See 32 Col.L.Rev. p. 1018. This rule does not justify that a loss should be imposed on another, or an unconscionable gain be allowed merely because of a promisor's ignorance of the law. Stark v. Equitable Life Assur. Soc., 205 Minn. 138, 285 N.W. 466.

That our courts recognize that, properly, exceptions must and do exist to the doctrine that a misrepresentation of law, equally open to all parties, will not vitiate a contract, is manifest from the use of the term "or some other peculiar fact or circumstance," as set out in the language employed in Georgia Home Ins. Co. v. Warten, supra [113 Ala. 479, 22 So. 290].

One of the peculiar facts or circumstances giving rise to an exception to the general rule that "misrepresentation of law will not vitiate a contract," now recognized in a number of cases, results when the representator is an attorney, or some person whose work infers special knowledge inviting confidence. Such person is presumed to possess superior knowledge, and where the other party, a layman, is unlearned in such field, the layman is justified in relying upon the representations of the specialist. Hicks v. Deemer, 87 Ill. App. 384; Bridgewater v. Byasse, 93 S.W. 35, 29 Ky.Law Rep. 377; Berry v. Whitney, 40 Mich. 65; Rosenberg v. Cyrowski, 227 Mich. 508, 198 N.W. 905; Tolley v. Poteet, 62 W.Va. 231, 57 S.E. 811; Altgelt v. Gerbic, Tex.Civ.App., 149 S.W. 233; Rusch v. Wald, 202 Wis. 462, 232 N.W. 875; Sainsbury v. Pennsylvania Greyhound Lines, Inc., 4 Cir., 183 F.2d 548, 551.

In the Sainsbury case, immediately supra, Judge Dobie set forth the reason for this rule as follows:

"In the case before us the reasons for vitiating the release are more cogent than in any of the cases which we have cited. Lawyers are, or should be,

regarded as possessed of knowledge and integrity beyond that of most of their fellows, certainly above the level of the market place. We find nothing unreasonable or imprudent in the reliance of the plaintiff upon the words of this attorney who had won the plaintiff's confidence through his friendly overtures and through his membership in an honorable profession. As between the parties to the release it is, of course, immaterial whether the fraud is of the factum or the inducement. See Meyers v. Murphy, [181 Md. 98, 28 A.2d 861] supra."

The fact that the attorney may represent an adversary does not affect the privilege to rely. Bowman v. Payne, 55 Cal. App. 789, 204 P. 406; Montgomery Door & Sash Co. v. Atlantic Lumber Co., 206 Mass. 144, 92 N.E. 71; Green v. Morris & Essex R. R. Co., 12 N.J.Eq. 165; Sainsbury v. Pennsylvania Greyhound Lines, Inc., supra.

This doctrine is limited by some courts and held inapplicable if the representee had an opportunity to inform himself of such misrepresentation and neglected to avail himself of such opportunity. Batesburg Cotton Oil Co. v. Southern Ry. Co., 103 S. C. 494, 88 S.E. 360; Adkins v. Hoskins, 176 Ark. 565, 3 S.W.2d 322; Burk v. Johnson, 10 Cir., 146 F. 209; Frankfort Ins. Co. v. Witty, 208 Pa. 569, 57 A. 990.

■ However, as stated by Prof. Williston, supported by innumerable citations, including several from this State: " * * * this broad doctrine can hardly be accepted today; misrepresentations often cause the person to whom they are addressed not to use the means of knowledge within his power. The modern tendency is certainly toward the doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud, or deprive the defrauded person of his remedy. Especially where there is a relation of natural trust and confidence, though not strictly a fiduciary relation, the failure of the defrauded party to exercise vigilance will not deprive him of redress. And so it is where one party has peculiar or superior knowl-

edge of the facts which enhance the reliability of his statements. Nor does the fact that the representation concerns a matter of public record exonerate the defrauder from liability." Williston on Contracts, Rev.Ed., (1937) Vol. 5, Sec. 1516.

■ Under the above principles it is our conclusion that the court properly overruled appellant's demurrer to plea 7.

Assignment of error number 3 asserts error in the action of the court in sustaining appellee's demurrer to appellant's replication number 2.

■ In general it appears to us that this replication sets up nothing more than the general issue, and this being so no harmful error resulted to appellant in this ruling. Butler v. Walton, 36 Ala.App. 319, 56 So.2d 369; Union Fertilizer Co. v. Johnson, 150 Ala. 159, 43 So. 752.

■ This aside, the record discloses that the issues sought to be presented by replication 2 were as fully litigated and as adequately presented as though the demurrer had been overruled. No harm resulted to appellant because of this ruling. Brasher v. Bromberg, 232 Ala. 450, 168 So. 552; Lambert v. Jefferson (on remandment), 34 Ala.App. 67, 36 So.2d 583; Milwaukee Mechanics Ins. Co. v. Maples, ante, p. 74, 66 So.2d 159.

Assignment of error number 4 takes the point that the court erred in sustaining appellee's objection to a question propounded to appellant's witness Augustine seeking to elicit testimony as to what appellee said to Augustine as to why he had come to the Bank of Loretto on January 4, 1950, the day on which the check was issued.

■ The record shows that almost immediately after this objection was sustained this witness was permitted to testify that Mr. Bobo told him when he came to the bank that he had come in regard to the Ed Craig note, and further that "Mr. Bobo said he came to take up the note that Ed Craig had given us on the automobile, since he had purchased the car that was in the mortgage." Clearly, in view of this later

testimony, the appellant was not injured by the ruling complained of, assuming the ruling was incorrect. Sup.Ct. Rule 45, Code 1940, Tit. 7 Appendix.

Assignment of error 5 relates to the action of the court in excluding, on motion of appellee, a statement of the witness Augustine that: "I of course accepted his check in payment for the Ed Craig note." We pretermit consideration of the propriety of the court's ruling in this instance for the record reflects that every fact and circumstance of the transaction concerning the execution and delivery of the check, and the purported assignment of the note, was testified to in detail by the witness Augustine, and by the appellee. No error justifying reversal could rationally have resulted from this ruling by the court. Sup. Ct. Rule 45.

Assignments 7 and 8 relate to the following instance.

During the cross-examination of Mr. Augustine the court overruled appellant's objection to the following question:

"Mr. Augustine, what effort did the bank, or its agents make to protect the interest of the mortgage, prior to employing an attorney, after the note became in default?"

In overruling the objection the court stated the witness could answer the question "if he knows."

The witness answered "He had been a customer of ours for some time."

Obviously the answer was innocuous, and no harm resulted to appellant regardless of the correctness of the court's ruling, a consideration we pretermit. Sup. Ct. Rule 45.

Assignment 9 asserts error on the part of the trial court in overruling appellant's objection to the following question propounded to appellant's witness Augustine on cross-examination:

"You said someone called your attention to the status of the note and mortgage, who was that?"

The witness answered: "I noticed he was getting behind, and I commenced checking on it."

The witness had previously testified without objection that the matter had been called to his attention.

The testimony elicited by the question was trivial, and whether technically admissible or not we do not express an opinion, for we cannot see that appellant was probably injured in his substantial right. Sup.Ct. Rule 45.

Assignment of error 10 relates to the court's action in overruling appellant's objection to a question propounded to the witness Augustine as to whether he ever personally communicated with Craig in regard to the note being past due prior to the time Mr. Bobo issued the check sued on.

The witness replied that notices were sent, but he did not know whether he had contacted Craig or not.

The theory of the appellee was that the note and mortgage were of no value, and therefore no consideration for appellee's check. The evidence sought has some probative value in establishing this theory, in that normally if the note were of value or deemed collectible by the bank it would appear that some effort would have been made to contact Craig after the note became past due.

This aside, we consider the evidence elicited to be of such little import as to place it within the operation of Sup.Ct. Rule 45.

Assignment of error 11 asserts error in overruling appellant's objection to a question propounded to Augustine seeking testimony as to when he first learned the automobile covered by the Craig mortgage had been removed to Alabama. While the materiality of this testimony is doubtful, the evidence resulting from it is again of such a trivial nature as to call into operation Sup.Ct. Rule 45.

Assignments 13 and 14 are clearly without merit as the record shows clearly

that the witness Augustine later in his testimony was permitted to answer fully, and without objection, substantially the same questions as the ones to which objections were sustained and which are the bases of these assignments.

Assignment 15 asserts error on the part of the trial court in overruling a question propounded by the court itself to the witness Augustine as to whether any effort had been made to collect the balance due on the note between the time the note became delinquent and the time Augustine called attorney Freeman at Bobo's request to see if he would undertake collection of the note for Bobo.

Again the evidence sought went remotely to the question of the value of the note assigned, and the appellant's view as to such value, if any.

■ This aside, the answer of Augustine was not responsive to the question, being to the effect that as soon as he learned the car was no longer in Tennessee he began looking for it. Error, if any, in the court's ruling was without any appreciable injury. Sup.Ct. Rule 45.

Assignments 16, 17, 18, 19, 20, 21, 22, and 23 pertain to rulings of the court in reference to overruling questions to the witness Augustine, seeking testimony as to whether the bank had charged off the Craig note prior to execution of the check by Bobo, and if Augustine had not told Bobo that it had been charged off and was the first loss the bank had suffered.

■ This testimony went to the question of the value of the note at the time of its purported transfer and went to the adequacy of the consideration for the issuance of the check. The court did not err in its rulings in these instances.

Assignments 24, 25, 26, 27, 28, 29 and 30 pertain to the action of the court in overruling appellant's objections to questions propounded to the witness Augustine on recross-examination as to whether he considered the Craig note collectible from Craig or Bobo, and as to whether any effort had been made prior to receipt of Bobo's check to collect the note or if suit had been filed thereon.

In his redirect examination Augustine had testified that the Craig note was considered collectible by the bank, though it had been charged off.

■ The questions on recross-examination of Augustine to which the objections were interposed sought evidence bearing on the credibility of the assertion of Augustine as to the collectibility of the note. The evidence was therefore properly admitted.

Assignments 31 and 32 relate to the court's action in sustaining appellee's objections to questions propounded to the attorney witness Freeman as to whether he was familiar with Alabama law in December 1949 at the time of his interview with Bobo.

■ These objections were properly sustained. Freeman had represented himself as a practicing attorney from Tennessee. His familiarity with Alabama law is not an issue in this case, but rather what he knew or should have known the law of Alabama to be. The fact that he was a lawyer from a sister State was, or should have been, sufficient to lull Bobo into confidence in his representations.

These assignments are therefore without merit.

Assignments 33, 34, and 35 pertain to the action of the court in sustaining appellee's objections to questions propounded by appellant to the witness Freeman, as a Tennessee lawyer, seeking testimony as to who, under the assignment on the back of the Craig note, would, under the laws of Tennessee, be the legal owner of the note.

■ The common law of a sister State may be proved by parol evidence by competent witnesses. Section 424, Title 7, Code of Alabama 1940. The objections should have been overruled.

However, it appears that the court did permit the witness to testify that the assignment on the note was one in form con-

sidered legal in Tennessee, and in use therein, and that it was an assignment without recourse. These were the ultimate facts sought by the questions to which the objections were sustained. No error probably injurious to the substantial rights of the appellant resulted from the rulings complained of in assignments 33, 34, and 35. Sup.Ct. Rule 45.

Assignment 36 relates to the action of the court in sustaining appellee's objection to a question addressed to Freeman as to whether he had personal knowledge that Ed Craig paid off a large number of obligations "shortly after that" (meaning. January 4, 1950).

The court did permit Freeman to testify as to his personal knowledge of property owned by Craig on January 4, 1950.

■ The value of the Craig note, as determined by Craig's worth, is relative to this cause only as his worth appears as of January 4, 1950. The fact that shortly after this date Craig paid off obligations can have no real probative value in determining this question. The objection was properly sustained to the above question.

Assignments 37 and 38 relate to the action of the court in overruling appellant's objections to questions propounded to Freeman eliciting testimony as to whether Freeman stated to Bobo in their conversation in Florence that he, Freeman, was a candidate for political office in Tennessee; that he was going to have the automobile within three days and that he was interested in other political campaigns in Tennessee.

■ Freeman having testified on direct examination as to his version of the conversation it was well within the rights of the appellee to propound questions relative to the entire conversation.

■ Proof by one party of a portion of a conversation entitles the opponent to prove all that was said at the same time on the same subject. Advertiser Co. v. Jones, 169 Ala. 196, 53 So. 759; Industrial Sav. Bank v. Mitchell, 25 Ala.App. 13, 40 So. 449.

The questions were permissible on other grounds also, but we refrain from a discussion in the interest of brevity.

■ Assignment 40 is without merit. A general motion to exclude an answer was made. A part of the answer was admissible.

Assignment 41 asserts as error the action of the trial court in permitting appellee Bobo to testify, over appellant's objection, that he had kept the automobile three weeks before he sold it to Elmer Johnson.

■■ The appellee, to bring himself within the provisions of our recording statute, section 123, Title 47, had the burden of showing that the Craig car had been in Alabama for more than three months without any mortgage or other lien being filed in Lauderdale County. The evidence objected to tended to meet appellee's burden in this regard, and was admissible.

Assignment 42 is without merit as the record shows that the question objected to was never answered.

Assignment 43 asserts as error the action of the lower court in overruling appellant's objection to a question propounded to the appellee Bobo as to whether Mr. Augustine, during their conversation in the bank told him that the Ed Craig note was no good.

■ This testimony was in direct rebuttal to prior testimony by Augustine, and was properly admitted.

Assignment 44 relates to the action of the court in permitting Bobo to testify over appellant's objection, supported by general grounds only, as to how often he would see the car after he had sold it to Elmer Johnson.

■ Such evidence tended to establish how long the car had been in Lauderdale County, with the resulting effect of our recording statutes in determining the rights of a bona fide purchaser. The testimony was therefore properly admitted.

Assignment 45 relates to the action of the court in sustaining appellee's objection

to a question propounded to the appellee on cross-examination as to whether Freeman had told him that he, Freeman, was an Alabama lawyer.

■ The question should have been allowed on cross-examination. However it related to an undisputed matter. Freeman had testified that he had not told Bobo he was an Alabama lawyer, and there was abundant evidence otherwise that he practiced in Tennessee and not in Alabama. Actually, since Freeman did represent to Bobo he was a lawyer, we cannot see that appellant was probably injured in his substantial rights by the exclusion of this testimony since his capacity as lawyer is the motivating factor in inducing reliance from one unlearned in law, and not the jurisdiction in which he may practice. Supreme Court Rule 45.

Assignments 46 and 47 relate to the action of the court in permitting R. E. Tollison to testify, over appellant's objection, as to parts of the conversation between Freeman and the appellee which Tollison overheard.

■ Clearly this evidence was admissible, both in its aspect of corroborating Bobo, and in rebuttal to Freeman's testimony.

Assignments 48 and 49, respectively, assert error in the action of the court in entering judgment for the plaintiff appellee, and in denying appellant's motion for a new trial.

These assignments may well be considered together.

It is our conclusion that under the pleadings and evidence produced in support thereof the court was justified in entering judgment for the appellee, and in denying appellant's motion for a new trial.

■ While contradictions in the evidence were present, it was solely within the province of the lower court, sitting without a jury, to resolve these disputes. The appellee's evidence, if believed under the required rule, was in our opinion sufficient to support the judgment entered. The legal principles applicable to the deter-mined facts have, in our opinion, been sufficiently indicated in the preceding discussions to obviate any further discussion at this stage.

Affirmed.