On October 19, 1979, within one year of the last date of his employment, Nat Wilkins instituted this action against his former employer, West Point-Pepperell, Inc., and numerous co-employee defendants, seeking to recover for personal injuries associated with byssinosis.[1] Wilkins seeks compensatory and punitive damages for "three separate and distinct injuries": 1) initial contraction of byssinosis; 2) aggravation of his condition; and 3) nondisability injuries suffered as a result of his allegedly being deceived into forgoing benefits due him under the Workmen's Compensation Act. Wilkins's claim for contraction of the disease is directed only against his co-employees, while his allegations of aggravation and "nondisability" injuries were cast against both his employer and his co-employees.
Defendants-Appellees moved to dismiss the complaint, urging the court, inter alia, to treat it as a claim for workmen's compensation benefits under the Alabama Workmen's Compensation Act. Code, § 25-5-81. The circuit court granted Defendants' motions to dismiss, leaving Wilkins the option of amending his complaint so as to state a cause of action for workmen's compensation. Instead, he instituted this appeal.
Appellant's counsel, in brief, state the "Issues Presented for Review" thusly:
 "I. Whether . . . plaintiff is precluded by the exclusive remedies provisions of the Workmen's Compensation Act from asserting claims at law against the coemployee defendants to this action for their fraud and other tortious conduct which proximately caused plaintiff to contract brown lung disease, to suffer an aggravation of his disease whereby he became totally disabled, and to forgo the benefits due him under the Workmen's Compensation Act?
 "II. Whether plaintiff is precluded by the exclusive remedies provisions of the Workmen's Compensation Act from asserting claims at law against his employer for its tortious conduct which caused plaintiff to suffer an aggravation of his work-related disease whereby he became totally disabled?
 "III. Whether plaintiff may sue his employer outside the compensation act for the nonphysical and nonwork-related injuries he suffered as a result of his employer's fraudulent scheme to mislead *Page 117 
him into forgoing the benefits which were his due under the Workmen's Compensation Act?"
We respond to issues Nos. I and III, as posed, in the negative, and to issue No. II in the affirmative; therefore, we affirm in part, reverse in part, and remand.
Counsel summarize their client's multiple claims:
 "[P]laintiff charges that he . . . suffered the first of these injuries, namely, [his] initial contraction of brown lung disease, as a proximate result of defendants' [other than the employer's] fraud and other tortious acts. Plaintiff alleges that the co-employee defendants `intentionally willfully, wantonly, and recklessly' permitted plaintiff . . . to be exposed to dangerously high concentrations of cotton dust while employed at defendant West Point Pepperell's Opelika mill. . . . In addition, plaintiff contends, though the co-employee . . . defendants to this suit were well aware that plaintiff . . . might contract brown lung disease as a result of [his] continued exposure to cotton dust at the Opelika mill, they never warned plaintiff . . . of this fact. Though defendants knew that . . . plaintiff [was not] aware of the real health risks to which [he was] subjected at the mill, defendants, for their own purposes, preferred to keep plaintiff . . . ignorant of these dangers.
". . .
 "Second, plaintiff's complaint alleges that the defendant employer to this suit, along with the co-employee . . . defendants, proximately caused plaintiff . . . to suffer aggravation of [his] work-related lung ailments and thereby to become totally disabled. This occurred when defendants, fully aware that plaintiff . . . had contracted brown lung disease, caused [him] to continue laboring in the mill while [he] became sicker and sicker and eventually became disabled.
 "When plaintiff . . . initially contracted brown lung disease, [he] suffered a variety of debilitating symptoms, especially impaired lung functioning. However, despite [his] initial contraction of the disease, [he] still had the capacity to work. It was only when plaintiff . . . continued to be exposed to the unhealthful conditions at the Opelika mill, after [he] had initially contracted brown lung disease, that [his] lung [condition] deteriorated to the point where [he was] no longer able to work.
". . .
 "As alleged in plaintiff's complaint, defendants intentionally withheld this information from plaintiff . . . for the purpose of deceiving [him] as to the work-related nature of [his] disease. As defendants knew, by failing to inform plaintiff . . . that [he was] suffering from byssinosis or brown lung, they caused plaintiff . . . to be misled into thinking that [his] lung illness had not been contracted due to [his] work.
". . .
 "Third, plaintiff alleges in his complaint that the employer-defendant to this action, as well as the co-employee . . . third party defendants, engaged in a fraudulent scheme designed to prevent plaintiff . . . from taking advantage of [his] entitlements under the Workmen's Compensation Act. As a result of this scheme, plaintiff alleges he . . . suffered a variety of nonphysical, or nondisability, injuries. These injuries consisted of the emotional and mental distress which plaintiff . . . suffered when upon [his] involuntary termination from defendant West Point Pepperell, Inc.'s employ, [he was] forced to eke out an existence in abject poverty, supported only by the meager sums provided by the social security system."
I. Employee's Claims Against Employer
Although we are impressed with the professional skills of counsel for Plaintiff, we perceive no purpose in burdening the opinion with a lengthy discussion of this issue. We hold that the "exclusive remedy" sections of the Workmen's Compensation Act stand as an impenetrable barrier to the claims here sought to be asserted by the *Page 118 
employee against his employer. §§ 25-5-52 and -53, and 25-5-3
and -4; see De Arman v. Ingalls Iron Works Co., Inc., 258 Ala. 205, 61 So.2d 764 (1952).
Counsel's argument, particularly with reference to Plaintiff's "nonphysical injuries," is commendably ingenious and highly persuasive; but it is in the nature of a policy argument which is more properly addressed to the legislature. However inclined we may be to accept Plaintiff's contention, we have no authority, constitutionally, statutorily, or otherwise, to judicially engraft an exception into the immunity provisions applicable to the employer. Clark v. Chrysler Corp.,342 So.2d 902 (Ala. 1977); see, also, Adair v. Moretti-Harrah Marble Co.,Inc., 381 So.2d 181 (Ala. 1980). By the explicit terms of the Workmen's Compensation Act, a compensable injury (and, in the case of pneumoconiosis, its aggravation) has its exclusive remedy against the employer under the act and not otherwise.Breimhorst v. Beckman, 227 Minn. 409, 35 N.W.2d 719 (1949). The trial court did not err in dismissing Plaintiff's claim against West Point-Pepperell.
 II. Employees' Claim Against Co-employees
Here, again, no lengthy discussion is required. Whether this Court, in light of Grantham and Fireman's Fund,[2] Will uphold the legislative grant of immunity to co-employees in occupational pneumoconiosis cases is characterized by co-employees' counsel as "the sole novel issue" presented by this appeal. While not accepting its validity, we agree as to its novelty. We hold that the trial court erred in perceiving a distinction between the "classic accident situation inGrantham" and occupational disease.
This erroneous perception is grounded on co-employees' counsel's two-fold, or dual aspect, approach to "occupational diseases": 1) Because a true "occupational disease" was not redressable at common law,[3] and, because Grantham preserved only common law rights of action, co-employee immunity applicable to byssinosis is a valid exercise of the legislative policy-making prerogative; and 2) the nature of the disease, and the scope of the legal duty for its prevention, is sufficiently different in kind, as well as in degree, to "demonstrate that the legislative immunity does remove, in the industrial disease context, a social evil: patently inequitable co-employee suits."
A single observation is dispositive of aspect No. I: If Wilkins's proof does not rise above the true "occupational disease" level, all third-party defendants will be entitled to directed verdicts. Stated conversely, if Wilkins meets his burden of proving the material elements of his claim (i.e., the alleged degree of defendant's culpability proximately causing his injury), necessarily, he will have removed himself from this *Page 119 
"assumption of the risk" defense. Thus, his claim falls squarely within the ambit of Grantham's protection.
Appellees' counsel's second contention that occupational disease should be treated differently, constitutionally, from other industrial, or "traditional tort," cases (and thus distinguishing this case from Grantham), is grounded in the following:
 "(1) In traditional tort cases, the danger is readily apparent to lay persons; whereas in disease cases some expertise is required to recognize the danger; (2) the hazard is localized in traditional tort cases, but in disease cases, it permeates most if not all of the workplace; (3) momentary exposure will likely result in sudden, definite and instantly disabling injuries in traditional tort cases. In disease cases prolonged exposure is required, resulting in gradual injury of uncertain onset; (4) individuals differ in the types and degrees of their reactions to disease-producing factors, unlike the similar injury to all persons caused by an open saw's coming in contact with a finger; (5) the injury is clearcut in tort cases, but in disease cases it can be extremely difficult to diagnose; (6) evaluation of the need for and means of remedial measures are within the capability of a lay person in accident cases; whereas expertise is required even to recognize the hazard much less to evaluate its remedy in the disease context; (7) traditional tort cases involve localized correction action but entire environments must be changed in disease cases; (8) the scope of a remedy for an accident is within the authority of coemployees, but for alteration of the environment, large resources would have to be committed by the owner itself."
While this latter approach is more sophisticated, its treatment and disposition need be neither lengthy nor complex. Without attempting to respond to each of the eight listed "distinctions," we agree, generally, with their factual content. But, at most, they merely serve to dramatize the plaintiff's awesome burden of proof in an occupational disease claim against a co-employee as opposed to a less demanding burden in a traditional industrial accident context.
For example, the instant Plaintiff, indeed, does have the burden of proving that the named co-employee Defendants had a legal duty, coupled with a sufficient degree of personal expertise and adequate facilities reasonably available to render Plaintiff's work environment reasonably safe to avoid the contraction or aggravation of his resultant injuries; all of which elements of proof are to be treated by traditional tort standards. (For a general statement of these standards in a co-employee tort context, see the concurring opinions inFireman's Fund.) This test is prematurely applied, as here, in the "motion to dismiss" posture of these proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
FAULKNER, SHORES and ADAMS, JJ., concur.
EMBRY, J., concurs in the result.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur in part and dissent in part.
[1] Byssinosis is a respiratory disease associated with work in the textile industry. It is more commonly referred to as "brown lung" disease, caused by the inhalation of minute particles of cotton dust, and is compensable under the pneumoconiosis provisions of the Workmen's Compensation Act (§ 25-5-140, et seq., Code 1975).
[2] Grantham v. Denke, 359 So.2d 785 (Ala. 1978); Fireman's FundAmerican Insurance Company v. Coleman, 394 So.2d 334 (Ala. 1980).
[3] This rule evolved from the premise that a true "occupational disease" was inherent in the workplace environment and could not have been prevented by the exercise of due care. Thus, it was an "assumption of the risk as a matter of law" principle. See Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530
(1937). Whether any given industrially induced illness is a true "occupational disease" depends upon the state of the art of prevention in the industrial community at any given time. For example, miners' silicosis (or ore miners' red lung and coal miners' black lung), once considered inherent in the employment, was ruled actionable where the evidence shows lack of due care in underground mine ventilation which would have avoided or reduced the risk (Minyard v. Woodward Iron Co.,81 F. Supp. 414 (N.D.Ala.S.D. 1948), aff'd, 170 F.2d 508 (5th Cir. 1948)), or where the evidence shows a breach of the health and safety provisions of the collective bargaining agreement(Tennessee Coal, Iron R. Co. v. Sizemore, 258 Ala. 344,62 So.2d 459 (1952)).
While this dichotomy is still viable in the employee/third-party defendant context, it was otherwise absolved in 1952 by the addition of the occupational pneumoconiosis provisions of the Workmen's Compensation Act (§25-5-140 et seq., which by express definition include all industrial dust-related lung conditions "whether or not said causes or conditions are inherent in the employment, or can be eliminated or reduced by due care on the part of the employer."