This is an appeal from a summary judgment as to four counts and a judgment dismissing the fifth count of a five-count complaint. We affirm.
Leonidas Moore, Jr., plaintiff below, a high school graduate, thirty-five years of age, was employed at Tallassee Mills (Mt. Vernon Mills, Inc.) in 1967 and worked there continuously from that time (except for a term of military service) until he was laid off in 1982.
In July 1975, while working as a loom fixer, Moore was injured, and hospitalized for a period of eleven days, during which time his right eye was surgically removed because of the injury to it in the on-the-job accident. He returned to work approximately three months later, was given a new job in the training room as a full-time instructor but at the same rate of pay he was receiving before the accident. While off the job he was paid temporary total workmen's compensation benefits at the then-maximum rate.
Ellis O. Frost, a claims adjuster with Liberty Mutual, the workmen's compensation carrier for Mt. Vernon Mills, contacted *Page 123 
Moore while Moore was in the hospital and advised that he would receive the maximum, all of the medical bills would be paid, and at an appropriate time after the doctor had released him a supplement would be paid under workmen's compensation.
Later, Moore was contacted at work by Frost, who advised Moore that he was entitled to additional compensation for loss of the eye, a greater sum if paid periodically or a lesser amount if paid in a lump sum. Moore stated, at that time, he wanted to think about the offer, as he was concerned about whether he would be receiving a fair settlement. Moore did, in fact, consult with his wife, brothers-in-law, and a sister-in-law about the matter. Some weeks later, Frost contacted Moore about the matter and was told that he, Moore, was not satisfied with the amount offered because he felt his eye was worth more. Frost informed him the amount offered was all he was entitled to receive. Moore suffered no bodily injury other than the loss of his eye, according to his testimony.
After the second contact by Frost, Moore discussed the claim with the general manager of the mill and a supervisor, a Mr. Redden, because he was concerned whether his job might be in jeopardy because of the accident and injury. He was assured he would have a job in spite of that.
Once again, Frost contacted Moore and again advised him that the scheduled benefits were all he would get as compensation. It was also related to Moore that there were time limitations on his claim. Moore then agreed to accept the commuted lump sum amount. Frost told him that he, Frost, would contact William Inge Hill, a Montgomery lawyer, to have the necessary papers prepared to present to, and have approved by, the court. In mid-January 1976, Moore, with his wife, went to Mr. Hill's office and was presented a settlement petition. After he and Mrs. Moore read it, Moore raised questions about some of the wording and medical benefits. The provision that closed payment of medical benefits was deleted at Moore's request. The petition was signed and then approved by Circuit Judge Carter of Montgomery County. After this was done, Moore was paid $8,829.52. Neither Moore, Frost, nor Hill discussed his job or anything concerning lifetime employment.
Moore testified in other proceedings that Mr. Beasley, his attorney, told him he was entitled to more compensation and he had been deceived about his benefits.
For the ensuing six-plus years, Moore continued to work for Mt. Vernon Mills, did not encounter any difficulties with his job, and was promoted. In April of 1982, Moore and hundreds of his fellow employees were laid off.
There is no evidence of any conspiracy by Frost and agents of Mt. Vernon Mills and no documentation of Moore's assertion he was promised lifetime employment. To the contrary, both of these matters are denied by defendants and Mt. Vernon Mills.
Issues
 (1) Did the trial court err when it entered summary judgment in favor of Liberty Mutual and Frost on Moore's claims for fraudulent misrepresentation, fraudulent suppression, failure to disclose, and conspiracy?
 (2) Did the trial court err in entering summary judgment in favor of Liberty Mutual and Frost on Moore's claims of outrageous conduct?
 (3) Did the trial court err in entering judgment dismissing Moore's claim of conspiracy?
Each of these issues must be answered in the negative.
 I
Under the facts of record, the claims for fraudulent misrepresentation and fraudulent suppression of facts are not ones for which relief may be granted, because of the exclusivity of the Alabama Workmen's Compensation Act. Code 1975, § 25-5-1 et seq.; Waldon v. Hartford Insurance Group,435 So.2d 1271 (Ala. 1983); Wilkins v. West Point-Pepperell, Inc.,397 So.2d 115 (Ala. 1981). Moore's remedy, if indeed there was fraud infecting the settlement *Page 124 
of his compensation claim, was to have it set aside under the provisions of Code 1975, § 25-5-56, and seek relief from the settlement judgment under the provisions of Rule 60, ARCP. However, in this case there is no evidence of any fraud.
There was no duty of disclosure upon the part of Liberty Mutual or Frost. There is no duty to disclose the law. It is available and presumed known. Henson v. Estes Health CareCenter, Inc., 439 So.2d 74 (Ala. 1983). Moore's allegations would require Frost to give legal advice, which the law prohibits a layman from doing. Wilkey v. State, 244 Ala. 568,14 So.2d 536 (1943).
Regarding the claim that may be read as one either for the bad faith failure to settle or the tort of outrageous conduct, we opine that no relief could be granted upon these claims. Bad faith or negligent conduct upon the part of the employer or its compensation carrier is not actionable. Relief is barred because of the exclusivity of the compensation remedy. Waldon,supra, Garvin v. Shewbart, 442 So.2d 80 (Ala. 1983).
The tort of outrageous conduct is not so barred. Garvin,supra. However, the facts of this case show there was no tortious conduct upon the part of the appellees. Cates v.Taylor, 428 So.2d 637 (Ala. 1983).
The judgments below are due to be, and they are hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.