**RANDOLPH COUNTY,**
Plaintiff-Appellant,

v.

**ALABAMA POWER COMPANY,**
Defendant-Appellee.

No. 84–7292.

United States Court of Appeals,
Eleventh Circuit.

March 18, 1986.

Francis H. Hare, Jr., John H. Lavette, James J. Thompson, Jr., Birmingham, Ala., for plaintiff-appellant.

James H. Miller, III, Birmingham, Ala., Sterling G. Culpepper, David R. Boyd, Montgomery, Ala., for defendant-appellee.

a part of the new roads and bridges the flooding made necessary.

Before RONEY and HATCHETT, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge:

This is an appeal from the United States District Court, Middle District of Alabama, Eastern Division, granting Alabama Power Company's motion for directed verdict. The district court determined that even if Randolph County could prove the misrepresentations alleged, the evidence did not support a finding of reliance as required by Alabama state law on fraud. We affirm.

## Background

Alabama Power Company (APCo) constructed a dam and reservoir on the Tallapoosa River in Randolph County, Alabama, which required the flooding of roads and bridges maintained by Randolph County (county) in the Crooked Creek watershed area. Alabama law permits a water power company, such as APCo, to flood public roads and bridges if it pays the affected county "the cost of locating, laying out and opening other public roads in lieu of and to the same extent as the public roads flooded or intended to be flooded." Ala.Code § 10–4–320(5) (1975).

In 1965, APCo and the county began negotiations to determine the amount of compensation APCo owed the county pursuant to state law. In 1969, the Randolph County Court of County Commissioners (Commissioners) issued an order setting compensation at $781,015.24. Upon APCo's 1974 petition, the Commissioners amended the amount to $1,056,015.24 to cover the additional flooding needed to meet federal licensing requirements. By the end of 1977, APCo paid the county the amount determined in the 1974 amendment. It was shown that this sum sufficed for but

### Proceedings Below

In 1981, the county sued APCo under 42 U.S.C. § 1983 and the Federal Power Act, 16 U.S.C. §§ 791a–828c, with pendent claims of fraud, alleging inadequate compensation. By order of November 10, 1983, No. 81–119–E, the court granted APCo's motion for summary judgment on all federal law claims. The case went before a jury on the issue of fraud. The jury, unable to reach a verdict, was discharged and a mistrial declared. APCo moved for directed verdict.

The county argued that the Commissioners were fraudulently induced into issuing orders in 1969 and 1974 that set the level of compensation lower than the amount to which the county was actually entitled. Specifically, the county claimed that APCo falsely represented the standard or measure of compensation on which the Commissioners relied in making their determination, i.e., "fair market value" instead of replacement cost. False representation in Alabama, the district court found in its decision of April 4, 1984, requires a false representation as to a material fact, reasonable reliance on that representation and a resultant injury. *Burroughs Corp. v. Hall Affiliates, Inc.*, 423 So.2d 1348, 1353 (Ala. 1982). The district court determined that the evidence as to whether the alleged misrepresentations were actually made was in conflict, but that neither party introduced evidence that "even suggested that the county relied upon APCo's alleged representations concerning the measure of compensation * * *." Instead, the court found undisputed evidence that the 1969 order was based on the studies of County Engineer C.P. McNeil (McNeil); that the McNeil studies focused on the cost of construction of functionally equivalent substitute facilities; and that the 1974 order was based on the McNeil studies with adjustments made

---

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

for inflation and federal licensing requirements. Viewing all the evidence in the light most favorable to the county, the district court determined that "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict," *Federal Kemper Life Assurance Co. v. First National Bank,* 712 F.2d 459, 464 (11th Cir. 1983), and accordingly, granted APCo's motion for directed verdict. The county appealed.

## *Discussion*

### I. *Charges of Fraud.*

The county argues that the district court erred in granting APCo's motion for directed verdict on the charge of fraudulent misrepresentation of the measurement method. On a motion for directed verdict, the court should "view all the evidence, together with all logical inferences flowing from the evidence, in the light most favorable to the non-moving party." *Neff v. Kehoe,* 708 F.2d 639, 641 (11th Cir.1983). On this basis, we must affirm the district court.

■ We first note that the proper way to fix an award for a taking of this kind is a legal matter, not a factual one. 4 *J. Sackman,* Nichols on Eminent Domain § 12.1[3] (3d ed. 1985). Thus, the misrepresentation alleged is a matter of law. Alabama law on fraud, codified in Ala.Code § 6–5–100 to 104 (1975), *Barrett v. Farmers & Merchants Bank,* 451 So.2d 257, 264 (Ala.1984), generally requires a misrepresentation of a material fact. *Army Aviation Center Federal Credit Union v. Poston,* 460 So.2d 139, 142–43 (Ala.1984); *Neff v. Kehoe,* 708 F.2d at 642; *United States v. Burgreen,* 591 F.2d 291, 297 (5th Cir.1979). Moreover, the Alabama Supreme Court has recently held that there is no duty to disclose the law because "it is available and presumed known." *Moore v. Liberty Mutual Insurance Co.,* 468 So.2d 122, 124 (Ala.1985); *Henson v. Estes Health Care Center, Inc.,* 439 So.2d 74, 76 (Ala.1983). Nonetheless, a rare few of Alabama cases have found fraud based on a misrepresentation of law.

*Spry Funeral Homes, Inc. v. Deaton,* 363 So.2d 786, 789 (Ala.Civ.App.1978); *Bank of Loretto v. Bobo,* 37 Ala.App. 139, 67 So.2d 77, 85, *cert. denied,* 259 Ala. 374, 67 So.2d 90 (1953). Those decisions involved representations made in exceptional circumstances, *e.g.,* where to hold to the contrary would be against public policy or where the speaker was an attorney. In this regard, we note that the Alabama Supreme Court recently found no fraud where the party charged with the misrepresentation was a layman. "Moore's allegations would require [the insurance representative] Frost to give legal advice, which the law prohibits a layman from doing." *Moore,* 468 So.2d at 124.

■ The record demonstrates that the member of APCo who allegedly made the misrepresentations was Neal Williams, a layman. As a layman, Mr. Williams is prohibited by law from giving legal advice. His representations as to the proper standard to use, a matter of law, cannot be the basis of a claim of fraud for either intentional/reckless or innocent/mistaken misrepresentations.

■ The county also argues that the district court erred in granting APCo's directed verdict motion because it improperly found that the county did not rely on APCo's statements. Again we disagree.

Alabama fraud law requires reasonable reliance and a resultant injury. The district court was correct in concluding that the evidence did not even suggest reliance where there was undisputed evidence that the dollar amounts in the 1969 and 1974 orders were based on the *county* engineer's studies that were based on the substitute facilities doctrine.

There are two other factors as regards reliance. First, we note that the transaction involving "real estate is a kind of transaction where retention of counsel is ordinary and usual," *Mills v. United States,* 410 F.2d 1255, 1258, 187 Ct.Cl. 696 (1969). The record demonstrates that Randolph County had a lawyer on retainer who could have advised it. The record, how-

ever, is not clear as to the actual involvement of this county lawyer. Mr. Fred McCain, a county commissioner at the time of the compensation negotiations, testified "[w]ell, I guess it's the commissioners' fault because we didn't look into the law, and nobody didn't tell us what the law was, and we took Mr. Neal Williams' word that that's all they [APCo] was going to pay." Tr. at 568.

Second, we are aware of a 1951 Fifth Circuit case describing the substitute facilities doctrine, *City of Fort Worth, Texas v. United States*, 188 F.2d 217, 222 (5th Cir. 1951), and a law review article, Note, *Just Compensation and the Public Condemnee*, 75 Yale Law Journal 1053 (1966), which describes the substitute facility doctrine as one developed by courts to meet the unique needs of public condemnees who must recover for the loss of bridges, roads, etc. It appears to us that the county could have made better use of its attorney and that its attorney could have determined the proper legal standard without undue burden. He could well have got enough light from the statutory text alone. This does not seem to be an example of reasonable reliance on the other side of the table.

■ The county argues that the district court erred in not ruling on the 6–5–102 Suppression of Material Facts charge under which affirmative misrepresentation is not required. We disagree. Reviewing Alabama law on section 102, the Eleventh Circuit recently held that either the confidential relations of the parties or the particular circumstances of the case must impose an obligation to communicate. *Kaye v. Pawnee Construction Co.*, 680 F.2d 1360, 1370 (1982). Without either of these, active concealment is required and the fact concealed must be material. *Id.* We do not construe the relationship between Randolph County and the Power Company, who by statute must pay the county for its flooded roads and bridges, as confidential. In addition, the particular circumstances of the case do not impose an obligation to communicate. The Court of County Commissioners was to determine the appropri-

ate compensation and APCo could either pay or appeal. *See* Ala.Code § 10–4–320(5) (1975) on the rights and authority of water power companies.

■ As regards fraud, we do not find that the district court erred in not presenting the county's deceit charge to the jury. An action for deceit under 6–5–103 and 6–5–104 results from either a willful or reckless misrepresentation or a suppression of material facts with an intent to mislead. Because we did not find a willful or reckless misrepresentation or a suppression of material fact above, we do not find deceit now.

The former Court of Claims, now defunct, dealt in *Stockton v. United States*, 214 Ct.Cl. 506 (1977) with a case where an officer of the United States Army Engineers had obtained grant of a flowage easement in a deed he had drafted, by misrepresenting in a letter the legal effect of the language he used in the deed. The grant was made without substantial consideration. The government was held to have obtained only the limited rights described in the letter, not the broader ones of the deed. The court's analysis shows it regarded the case as belonging in the category of those in which a government contract was reformed because overreaching officials had taken advantage of a mistake which should have been obvious to them. The case points to an avenue the county might have pursued with better chances of success, but the differences are obvious. The deed in *Stockton* was a "contract of adhesion" which the landowner had no hand in drafting and was asked to sign on representations that the matter was of small importance. The suspicion of modern law towards such contracts is well known.

We note that under the Alabama practice the County Commissioners constituted themselves a "Commissioner's Court," though not a court of record. After such consideration as seemed good to them, they entered an order in 1969, and a modification of it in 1974, setting the awards the county was to receive, each of them being

in form unilateral orders or decrees, not bilateral contracts. The county in this litigation pretty much disregards this form, but that is no reason why we should do so. The Commissioners wielded the sovereign power, as the Army Engineers did in *Stockton*. They were the government. APCo was the suppliant. To picture such a body as being made the victim of a contract of adhesion when there was no contract at all, requires a particularly active imagination. To substantiate the scenario, the court's present representative adduces some picturesque details, for example, that one of the then Commissioners could not read or write, but the picture of this as any classic overreaching case is not fully drawn. Why the Commissioners made a determination so much, as it proved, to the county's disadvantage, is not really explained in the county's case, giving it the utmost possible weight, except as a sheer error of judgment. Without a clear explanation which pins some kind of estoppel or misconduct on APCo, the law of equity cannot be invoked. Misrepresentation as to the lawful manner of assessing an award just will not bear the load. The Commissioners can console themselves with the classic words of Mayor Fiorella LaGuardia of New York, "When I make a mistake, it is sure to be a beaut!"

## II. *Pretrial Order and Fed.R.Civ.P. 16(e).*

The county argues that the district court erred in "striking" certain factual representations made by APCo. We do not see that the district court struck any factual allegations. Instead, the record reveals that the county, in its amended complaint filed December 6, 1983, claimed four other misrepresentations as a basis for relief: APCo's representations regarding the elevation on which the county should base its calculations; APCo's representation that it did not need to treat the county the same as the state; APCo's representation on the escalation adjustment between the 1969 and 1974 orders; and APCo's representations that they would not build the dam unless the county accepted APCo's cost to benefits ratio. On January 25, 1984, the judge directed the parties to prepare a joint pretrial order. The pretrial order, filed February 21, 1984, did not include the four factual allegations above.

■ Rule 16(e) of the Federal Rules of Civil Procedure provides that a pretrial order controls the subsequent action of the litigation. The parties are bound by their agreement to so limit issues and may not introduce at trial issues excluded in the pretrial order. *See Jackson v. Seaboard Coast Line Railroad Co.*, 678 F.2d 992, 1015 n. 34, 1019 (11th Cir.1982); *Allen v. United States Steel Corp.*, 665 F.2d 689, 696 (5th Cir.1982); 3 J. Moore, W. Taggard & J. Wicker, Moore's Federal Practice, ¶ 16.19 (2d ed. 1985). It is within the judge's discretion to exclude those matters not set forth and we see no abuse of discretion here.

## III. *42 U.S.C. § 1983.*

■ The district court granted APCo's motion for summary judgment on November 10, 1983, finding that the county does not have any federally protected right against a state that takes public property without paying compensation. We agree. As the Fifth Circuit aptly explained in *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254–55 (1976)

[P]ublic entities which are political subdivisions of states do not possess constitutional rights, * * *, in the same sense as private corporations or individuals. Such entities are creatures of the state, and possess no rights, privileges or immunities independent of those expressly conferred upon them by the state. * * * The fact that public entities are not rightholders in the same sense as private parties has particular relevance in determining whether a municipality is a "person" entitled to bring suit under the 1871 Civil Rights Act. * * * The legislative history as detailed in *Monroe* [v. *Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ] makes it clear that congressional concern in passing the Civil Rights Act

was to create a federal remedy for *private persons* seeking redress of violations of their civil rights. * * * Accordingly, there is no reason why the Supreme Court's clear holdings in the context of suits against municipal defendants that municipalities are not persons within the meaning of the 1871 Civil Rights Act [including 42 U.S.C. § 1983, derived from § 1 of that Act] do not also apply where the municipality seeks to bring suit as plaintiff. [Citations omitted.] [Emphasis supplied.]

We need add nothing more.

### Conclusion

We affirm the district court's granting of APCo's motion for directed verdict on the misrepresentation count; we see no error in the court's decision not to submit the suppression of facts and deceit counts to the jury; we see no error in the court's disregard of factual allegations excluded from the pretrial order; and we affirm the district court's granting of summary judgment on the 42 U.S.C. § 1983 count.

AFFIRMED.