**EPPS AIRCRAFT, INC., Plaintiff,**

v.

**EXXON CORPORATION, Defendant.**

Civ. A. No. 92–T–754–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 10, 1993.

Dennis R. Bailey, Jack B. Hinton, Jr., Rushton, Stakely, Johnston & Garrett, Montgomery, AL, for plaintiff.

John R. Bradwell, Gerald W. Hartley, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Epps Aircraft, Inc., a fixed-based operation facility at Dannelly Field Airport in Montgomery, Alabama, has brought this action claiming that defendant Exxon Corporation illegally collected municipal taxes on aviation fuel Exxon sold to Epps Aircraft over a period of years. Epps Aircraft asserts two state-law claims against Exxon: (1) money-had-and-received, and (2) fraud, both innocent and intentional.[1] This cause is now before the court on Exxon's motion for summary judgment. For reasons set forth below, the court concludes that the motion should be granted.

## I. BACKGROUND

From 1969 until February 28, 1992, Epps Aircraft purchased aviation fuel from Exxon and resold this fuel at Dannelly Field airport in the City of Montgomery.[2] The sales agreement between Epps Aircraft and Exxon required that "Any tax, excise or governmental charge imposed upon the ... sale ... of any product sold hereunder or imposed upon crude oil or any other raw materials from which such products are made, which Seller may be required to pay, shall be paid by Buyer to Seller if not included in the purchase price."[3]

The City of Montgomery began charging a one-cent tax on the sale of fuel in 1938. In 1967, the State of Alabama declared null and void any local ordinance which imposed "any new or additional license, tax or excise on the sale, distribution, storage, use or consumption of gasoline or any substitute therefor

---

1. *See* amended complaints filed on July 31, 1992, and April 8, 1993.

2. Epps Aircraft used a small percentage, one tenth of one percent, of all fuel purchased by it from Exxon to transport fuel to and from aircraft, or for a brief period of time, in the operation of a flight school. Defendant's Brief in Support of Motion for Summary Judgment, Deposition of George F. Epps, pp. 46–53, 95–104.

3. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibit C.

which is consumed as aviation fuel." 1975 Ala.Code § 40–17–50. In 1986, the City of Montgomery enacted License Ordinance 48–91 § 19C–21(f)(2), which increased its tax on the sale of fuel, including aviation fuel, to four cents for each gallon. Notwithstanding any question as to the validity of the tax increase, the city collected the four-cent tax on aviation fuel throughout the period of sales by Exxon to Epps Aircraft.

From 1980 until sometime in 1986, Exxon collected one cent for each gallon of aviation fuel sold to Epps Aircraft. From 1986 until sometime in 1992, Exxon collected four cents for each gallon of fuel sold. These taxes were included as excise taxes on invoices from Exxon to Epps Aircraft. With the exception of a three percent administrative fee retained by Exxon, all funds collected by Exxon under the fuel tax were transmitted to the City of Montgomery. The city authorized the three percent administrative fee as reimbursement for expenses incurred in collecting the municipal tax.

Epps Aircraft initiated this lawsuit in state court in May 1992. In June 1992, Exxon removed it to this court based on diversity of citizenship between the parties. 28 U.S.C.A. §§ 1332 (West 1966 & Supp.1993), 1441 (West 1973 & Supp.1993).

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial).

## III. DISCUSSION

As a preliminary matter, the court must address Epps Aircraft's standing to bring this action. Exxon argues that Epps Aircraft lacks standing because the city's fuel tax is a "consumer tax," that is, one that is to be passed through the various points of sale to be borne ultimately by the consumer. As such, according to Exxon, only a consumer would have standing to bring this action. In response, Epps Aircraft argues that the city fuel tax is a privilege license tax to be paid by Exxon for the privilege of doing business in the City of Montgomery.

■ This court need not determine the nature of the tax, the status of which is not before it in the instant case. Standing is conferred upon Epps Aircraft in this case regardless of the nature of the tax. Epps Aircraft alleges money-had-and-received and fraud on the part of Exxon in a series of business transactions between the two parties. The elements of these causes of action do not turn on the designation of the fuel tax as either "consumer" or "privilege license." The question is whether Epps Aircraft has established these elements and, if so, whether Epps Aircraft has been damaged as a result.

### A. *Money-Had-and-Received*

■ The justification for an action for money-had-and-received is that the plaintiff has conferred a benefit upon the defendant, causing the defendant to be unjustly enriched. This cause of action derives from contract principles of implied contract and restitution, which require that a benefit have been conferred for a plaintiff to recover, and also from the equitable principle that one may not be unjustly enriched at the expense of another. In either case, the threshold showing is that the defendant has been enriched. *See* 42 C.J.S. *Implied Contracts* § 11 (1991); *Restatement (Second) of Contracts* § 370 (1981).

■ Consistent with these principles, the standard for a claim of money-had-and-

received under Alabama precedent is that the plaintiff must "prove facts showing that defendant *holds* money which, in equity and good conscience, belongs to plaintiff or *holds* money which was improperly paid to defendant because of mistake or fraud." *Hancock–Hazlett General Const. Co., Inc. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala.1986) (emphasis in original); *see also Foshee v. General Tel. Co. of Southeast*, 295 Ala. 70, 322 So.2d 715 (1975); *Wash v. Hunt*, 281 Ala. 368, 202 So.2d 730, 733 (1967). To succeed on this claim against Exxon, Epps Aircraft must therefore show both that Exxon *holds* its money, that is, has been enriched, and also that the money retained belongs to Epps Aircraft. Epps Aircraft has introduced no evidence to show that Exxon holds or has received the benefit of any of its funds, and indeed admits that it does not.[4] In *Hancock–Hazlett*, the Alabama Supreme Court found it to be "obvious" that the defendant "had not been 'unjustly enriched,' as a matter of law, by retaining any money; it does not have in its possession any money belonging to" the plaintiff. 499 So.2d at 1387. Exxon functioned primarily as a "pass-through" for the city fuel taxes, and did not retain the taxes for its own benefit. Exxon has not been unjustly enriched as a matter of law.

It is conceded by both sides that Exxon has retained a three percent administrative fee as reimbursement for collecting the tax from Epps Aircraft.[5] Exxon serves as the "collecting agent" of the City of Montgomery.[6] While in terms of practical accounting, Exxon passed on to the city only 97% of the tax dollars it collected from Epps Aircraft, Exxon in essence paid the city 100% of the tax dollars and received back a fee for its administrative expenses. The three percent retained by Exxon is not held as Epps Aircraft's fuel taxes, but rather as a fee for Exxon's collection services paid to it by the city pursuant to a separate agreement.[7] If the tax is invalid as alleged by Epps Aircraft, it is the city that is liable to Epps Aircraft for 100% of the tax dollars paid. Thus, even if Epps Aircraft could show that the money was collected by mistake or fraud, Exxon's enrichment is for services rendered to the city; this enrichment is not unjust because the money does not belong to Epps Aircraft but was earned by Exxon. Exxon, therefore, is entitled to summary judgment on Epps Aircraft's money-had-and-received claim as a matter of law, notwithstanding its retention of the three percent administrative fee.[8]

4. George F. Epps, President and Chairman of Epps Aircraft, Inc., testified:
 "Q: Do you contend that Exxon has in its possession any money collected as a tax or as a city license from Epps Aircraft?
 A: No, I'm not contending that.

 . . . . .
 Q: Okay. Do any employees of Epps Aircraft have any information that any monies collected by Exxon Corporation as city license tax have not been paid over to the City of Montgomery?
 A: Not to my knowledge."
 Defendant's Brief in Support of Motion for Summary Judgment, George F. Epps Deposition, pp. 68–69.

5. This fee is provided for not by ordinance, but rather pursuant to an administrative agreement between the City of Montgomery and Exxon. Epps Aircraft paid $63,000 in aviation fuel taxes between 1986 and February 1992. Exxon's administrative fee, therefore, was $1,890.

6. Correction to Exxon's Brief in Support of Motion for Summary Judgment, p. 2.

7. This is not a case where Exxon was "not authorized to collect the account." *Warrior River Tow-*

*ing, Inc. v. Kennedy*, 574 So.2d 843, 845 (Ala.Civ. App.1990) (payment due to be refunded where payee not authorized to collect from payor).

8. Moreover, the evidence not only fails to support Epps Aircraft's claim of money-had-and-received, it indicates that it would be greatly unfair to Exxon, both under the equitable principles of law discussed above and under every-day common-sense notions of fairness, to impose on Exxon the relief requested by Epps Aircraft. Exxon was acting pursuant to a putatively valid municipal ordinance. Now that Epps Aircraft has discovered that the ordinance may be invalid, it wishes to fault Exxon, and not itself, for its lack of diligence, and to saddle Exxon, and not itself, with its losses. However, because the validity of the municipal ordinance was open to legal challenge equally by both Epps Aircraft and Exxon and because Exxon reaped no benefit from the money paid by Epps Aircraft, it would be particularly unfair to look to Exxon to make Epps Aircraft whole for Epps Aircraft's dereliction. To the extent state law does not allow a refund from the City of Montgomery, Epps Aircraft should look to itself alone for not being diligent in the protection of its own interest.

B. *Fraud*

■ The statutory basis for a claim of fraud provides:

"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."

1975 Ala.Code § 6–5–101. The misrepresentation of material fact may therefore be either intentional or innocent. *Maring–Crawford Motor Co. v. Smith*, 285 Ala. 477, 233 So.2d 484, 487 (1970).[9] To recover, a plaintiff must show that: (1) the representation was false; (2) the misrepresentation concerned an existing material fact[10]; (3) it justifiably relied on the misrepresentation; and (4) it suffered damages proximately resulting from its reliance. *Patel v. Hanna*, 525 So.2d 1359, 1360 (Ala.1988).

■ Exxon argues that this action should be barred by the statute of limitations. Under 1975 Ala.Code § 6–2–3, the statute of limitations is two years. The time period begins to run when the fraud is discovered, or should reasonably have been discovered. *Miller v. Mobile County Bd. of Health*, 409 So.2d 420 (Ala.1981). Exxon argues that Epps Aircraft should have discovered the alleged fraud in 1967, when the Alabama statute prohibiting new or additional aviation taxes, 1975 Ala.Code § 40–17–50, was passed, or at least in 1969 when Epps began to purchase fuel from Exxon. This is untenable as a factual matter, since Exxon did not even begin to charge Epps Aircraft any city fuel taxes until 1980 and the tax was not increased to four cents until 1986. Thus, the earliest Epps Aircraft should have discovered the alleged fraud would have been 1980 or 1986.

Epps Aircraft denies having knowledge of the alleged fraud prior to filing this lawsuit in 1992. "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff *actually knew* of facts that would put a reasonable person on notice of fraud." *Hicks v. Globe Life & Acc. Ins. Co.*, 584 So.2d 458, 463 (Ala.1991) (emphasis in original). Since Exxon has furnished no evidence of actual knowledge, a genuine issue exists as to when Epps Aircraft should have discovered the alleged fraud. Summary judgment on the fraud claim on the basis of the statute of limitations is therefore inappropriate.

■ Exxon is, however, entitled to judgment as a matter of law on Epps Aircraft's fraud claim. The first requirement of fraud is that of false representation, and a serious question exists as to whether a *mis* representation was made here at all. The City of Montgomery was in fact collecting the fuel tax and the ordinance on its face did apply to the sales of fuel from Exxon to Epps Aircraft. Exxon included this tax with other excise taxes it was required to pay. Assuming representations were made, either by the billing statement or by Exxon personnel, there is no evidence that Exxon represented the charges as anything other than city fuel taxes.

A factual issue does exist, however, as to whether Exxon made affirmative representations to Epps Aircraft that the charges were for a valid city fuel tax. If such representations were made, and if the City of Montgomery ordinance were in fact invalid, Exxon would have made a misrepresentation. Thus, if the court were to find that the city fuel tax is invalid, Epps Aircraft's claim could survive the misrepresentation prong. Since Epps Aircraft's fraud claim has a more fatal flaw, however, the court need not decide the validity of the Montgomery tax as applied to aviation fuel.

■ Epps Aircraft must show not only that Exxon made a misrepresentation, but also that it misrepresented an existing material *fact*. It has not done so. As noted

---

**9.** Whether the misrepresentation was innocent or intentional may, however, be relevant on the issue of damages.

**10.** As the court explains later, in exceptional circumstances, mistakes of law are actionable fraud under Alabama law, such as where the speaker is an attorney or where it would be contrary to public policy to deny relief. *See, e.g., Spry Funeral Homes, Inc. v. Deaton*, 363 So.2d 786, 789 (Ala.Civ.App.1978).

above, there is no evidence that Exxon represented the charge as anything other than a city fuel tax.[11] Assuming *arguendo* that the city fuel tax is invalid, Exxon's misrepresentation is one of law, not fact. Under Alabama law, mistake of law is generally not actionable fraud. *Randolph County v. Alabama Power Co.,* 784 F.2d 1067, 1070 (11th Cir.1986), *cert. denied,* 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 833 (1987); *Henson v. Estes Health Care Center, Inc.,* 439 So.2d 74, 76 (Ala.1983); *Bank of Loretto v. Bobo,* 37 Ala.App. 139, 67 So.2d 77, 85, *cert. denied,* 259 Ala. 374, 67 So.2d 90 (1953). Generally, there is no duty to disclose the law, absent a confidential relationship, based on the "maxim, born of necessity, that all men are conclusively presumed to know the law." *Hemphill v. Moody,* 64 Ala. 468, 473 (1879); *see also Henson,* 439 So.2d at 76 ("There is no duty to disclose laws which are accessible to and presumed to be known by all").

■ The rule that a misrepresentation of law does not constitute fraud is not without qualification. First, an exception exists where a mistake of law "amounted to an implied assertion that facts existed which justified the conclusion of law expressed...." *Bank of Loretto,* 67 So.2d at 85 (quoting *Clayton v. Glasscock,* 221 Ala. 3, 127 So. 538 (1930)). In the instant case, Exxon's alleged mistake of law did not in any way imply a set of facts. Exxon's mistake was a "pure" mistake that it was legally required to pay and collect city fuel taxes.

■ A second exception exists where the speaker is an attorney or where to hold to the contrary would be against public policy. *Randolph County,* 784 F.2d at 1070. Exxon did not have an attorney-client relationship with Epps Aircraft. The public policy exception is applicable where the public as third party to the alleged fraudulent transaction would be harmed. *Spry Funeral Homes, Inc. v. Deaton,* 363 So.2d 786, 789 (Ala.Civ. App.1978) ("Where the right to do business and hence competition is suppressed [by illegal restraints on trade], the public eventually pays the price"). Here, Exxon's mistake of

law is restricted to its transactions with Epps Aircraft and does not give rise to an exception on public policy grounds.

Epps Aircraft rightly argues that the mistake of law rule is predicated on the presumption that a party knows the law pertaining to *its own transactions.* Epps Aircraft then contends, however, that its fraud claim is actionable because it cannot be presumed to know the intricacies of Exxon's tax liabilities. This argument is untenable. Epps Aircraft need not know all aspects of Exxon's tax liabilities, but it will be presumed to know those tax laws bearing directly on its own purchases of fuel from Exxon. This is all the more within the scope of Epps Aircraft's "own transactions" because the sales agreement governing each purchase by Epps Aircraft from Exxon required Epps Aircraft to pay Exxon's taxes on the transaction. The Alabama Court of Civil Appeals has construed this presumption broadly, and held, for example, that "persons who deal with state governmental agencies are presumed to know the legal powers of those agencies." *Turner v. State Employees' Retirement System,* 485 So.2d 765, 766 (Ala.Civ. App.1986).

## C. *Miscellaneous Issues*

Epps Aircraft has attempted to introduce evidence pertaining to Exxon's practices in other cities and with other purchasers in the City of Montgomery. This evidence does not relate to any material issue. Even if Epps Aircraft could show that Exxon did not charge all other purchasers the local fuel tax, this would not negate the court's conclusions that Exxon's misrepresentation was one of law and that, because Epps Aircraft is presumed to know the law, it is unable to rely on any misrepresentation by Exxon. Again, City of Montgomery License Ordinance 48–91 § 19c–21(f)(2), as written and applied by the city, did require taxation of Exxon's sales to Epps Aircraft.

The court need not address Exxon's contention that Epps Aircraft is required to

---

11. There is no evidence to suggest that Exxon represented the charge as anything other than a fuel tax. If it had represented the charge as a

delivery fee, for example, it would have made a factual misrepresentation.

exhaust its administrative remedies before bringing suit against Exxon, or whether such an argument would apply in this case. Nor need the court address Exxon's argument that this action is barred because the City of Montgomery is an indispensable party, since the court is not deciding the validity of the city's ordinance.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that the motion for summary judgment, filed by defendant Exxon Corporation on February 2, 1993, is granted, and that judgment is entered in favor of defendant Exxon Corporation and against plaintiff Epps Aircraft, Inc., with plaintiff Epps Aircraft, Inc., taking nothing by its complaint.

It is further ORDERED that costs are taxed against plaintiff Epps Aircraft, Inc., for which execution may issue.